IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:14-CV-717-F

| | | |
|---|---|---|
| REGINALD HAGANS, Administrator of the Estate of Nijza Lamar Hagans, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF FAYETTEVILLE, a North Carolina municipal corporation, AARON LEE HUNT, individually and in his official capacity as a law enforcement officer with the Fayetteville (N.C.) Police Department, and DOES 1 through 25, inclusive, individually and in their official capacities,<br><br>Defendants. | ) | **ORDER** |

Plaintiff Reginald Hagans ("Hagans"), the Administrator of the Estate of Nijza Lamar Hagans ("Nijza"), has sued Defendants City of Fayetteville ("City" or "Fayetteville"), Aaron Lee Hunt ("Officer Hunt"), and Does 1 through 25, for damages arising out of the death of Nijza during a motor vehicle stop by Hunt. Presently before the court is the Partial Motion to Dismiss [DE-11] filed by Defendants Fayetteville and Officer Hunt. Hagans has opposed the Partial Motion to Dismiss, and also has filed a Motion for Leave to File a Supplemental Complaint [DE-21]. For the reasons more fully stated below, the Partial Motion to Dismiss [DE-11] is ALLOWED in part and DENIED in part and the Motion for Leave to File a Supplemental Complaint [DE-21] is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 24, 2013, at approximately 6:10 a.m., Nijza was driving his girlfriend's Ford Explorer on Morganton Road in Fayetteville. Compl. [DE-1-1] ¶ 70. Officer Hunt had

just finished his work shift and was driving home in the opposite direction when he saw Nijza and felt that "something just didn't seem right." *Id.* at ¶ 71. Officer Hunt made a U-turn and activated his blue lights to initiate a traffic stop; according to the Complaint, Officer Hunt lacked probable cause or reasonable suspicion to stop or detain Nijza. *Id.* at ¶¶ 72-73. Hagans alleges that Officer Hunt's decision to stop Nijza on his "hunch" is "consistent with the Fayetteville Police Department's practice, custom, and history of disproportionately and discriminatorily initiating traffic stops of Black and African-American motorists . . . and conducting searches and seizures where probable cause and/or reasonable suspicion to do so does not otherwise exist." *Id.* at ¶ 74.

Nijza turned right onto South Virginia Avenue and stopped his vehicle after pulling over to the side of the road. *Id.* at ¶ 75. After arriving at the driver's side door, Officer Hunt allegedly asked Nijza for his driver's license and registration, which Hagans produced. *Id.* at ¶ 79. For the next three minutes, Officer Hunt and Nijza had a "conversation of unknown substance." *Id.* at ¶ 80. Officer Hunt's body mic was not activated during this conversation, which Hagans contends was in violation of Fayetteville Police Department's standard operating procedure. *Id.* at ¶ 77-78. In any event, Hagans alleges that Officer Hunt has previously admitted that during this three minute conversation, Nijza did not utter or communicate a threat to Officer Hunt's safety. *Id.* at ¶ 81.

Approximately three minutes after producing his driver's license and registration, Nijza opened the door of the vehicle and started running away from Officer Hunt. *Id.* at ¶ 82. Hagans alleges that "[a]t no time during his encounter with [Officer] Hunt did Nijza . . . point, hold, brandish, reach for, display, or otherwise use or threaten to use a weapon of any kind." *Id.* at ¶ 83. Hagans further alleges, upon information and belief, that at no time during this encounter did

Officer Hunt "reasonably and objectively believe that Nijza was pointing, holding, brandishing, reaching for, displaying, or otherwise using or threatening to use a weapon of any kind." *Id.* As Nijza was fleeing, Officer Hunt drew his firearm, activated his body mic, and fired an initial three burst of shots at Nijza. *Id.* at ¶ 84. Hagans alleges, upon information and belief, that these first three shots incapacitated Nijza. *Id.* at ¶ 86. Several seconds after firing the initial bursts of bullets, Officer Hunt fired two more gunshots at Nijza, striking him in the back and ultimately causing his death. *Id.* at ¶ 87. Following the shooting, "a phalanx of Fayetteville police officers" rushed to the scene. *Id.* at ¶ 88. According to Hagans, Officer Hunt and these other officers "deliberately withheld medical care, attention, and treatment" and allowed Nijza to die in the same location where his body had fallen. *Id.* at ¶ 88.

Hagans further alleges that the Fayetteville Police Department has a history of using excessive force against the citizens of Fayetteville, and details five separate shootings of "unarmed and/or non-threatening black citizens by Fayetteville Police Officers," noting that four of the citizens were killed, and three of them were shot multiple times in the back. *Id.* ¶¶ 52-61.

Hagans filed suit in Cumberland County Superior Court on September 29, 2014, asserting the following claims: COUNT I) Wrongful Death – Negligence against Officer Hunt, individually and in his official capacity; COUNT II) Wrongful Death – Negligence Per Se against Officer Hunt, individually and in his official capacity; COUNT III) Wrongful Death –Assault and Battery against Officer Hunt, individually and in his official capacity; COUNT IV) Wrongful Death – Direct Negligence against the City; COUNT V) Wrongful Death – Imputed Negligence against the City; COUNT VI) Wrongful Death – Assault and Battery against the City; COUNT VII) Violation of 42 U.S.C. § 1983 – Excessive Force

and Unlawful Traffic Stop against Officer Hunt, individually and in his official capacity; COUNT VIII) Violation of 42 U.S.C. § 1983 – Denial of Medical Care against Officer Hunt and DOES 1-15, individually and in their official capacities; and COUNT IX) Violation of 42 U.S.C. § 1983 – Excessive Force, Unlawful Traffic Stop, and Denial of Medical Care against the City. Defendants timely removed the action to this court, and Officer Hunt and the City filed the Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6), arguing, *inter alia*, that certain claims must be dismissed on the basis of governmental immunity.

Hagans opposes the Partial Motion to Dismiss, and has a filed a Motion for Leave to file a Supplemental Complaint asserting additional claims under 42 U.S.C. § 1983 for denial of substantive due process rights and under 42 U.S.C. § 1983 and the North Carolina Constitution for denial of equal protection. Specifically, Hagans argues that the Defendants' actions in asserting governmental immunity as a defense in this action deny him his rights of substantive due process and equal protection.

## II. STANDARD OF REVIEW

The City and Officer Hunt move to dismiss claims pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure. Specifically, they move to dismiss the tort claims on the grounds of governmental immunity, pursuant to either Rule 12(b)(1) and (2), and other claims for failure to state a claim or as duplicative, under Rule 12(b)(6).

Under North Carolina law, governmental immunity is a form of sovereign immunity, and as such, it raises an issue of jurisdiction. *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). The North Carolina Supreme Court has not resolved whether governmental immunity challenges personal jurisdiction, as opposed to subject matter jurisdiction. *See Teachy v. Coble*

*Dairies, Inc.*, 306 N.C. 324, 326-28, 293 S.E.2d 182, 183-84 (1982); *Myers v. McGrady*, 360 N.C. 460, 465 n.2, 628 S.E.2d 761, 765 n.2 (2006) (explaining that in *Teachy* the North Carolina Supreme Court "considered, but did not decide, whether sovereign immunity is a matter of a personal or subject matter jurisdiction" and that since then that court "has simply referred to the sovereign immunity bar as fatal to 'jurisdiction' without further specification"). The North Carolina Court of Appeals, however, has determined that "sovereign immunity presents a question of personal jurisdiction, not subject matter jurisdiction[.]" *Green v. Kearney*, 203 N.C. App. 260, 265, 690 S.E.2d 755, 760 (2010). Although the North Carolina Court of Appeals decisions are persuasive as to what the North Carolina Supreme Court would hold, and therefore indicate that this court should review the Defendants' motions under Rule 12(b)(2), this court will follow the lead of other federal district courts, and out of an abundance of caution, will consider the motion to dismiss on the basis of governmental immunity under both Rules 12(b)(1) and (2). *See Yarbrough v. East Wake Charter School*, ___ F. Supp. 3d ___, 2015 WL 3541347, at *3 (E.D.N.C. Feb. 24, 2015).

Rule 12 states that "if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) challenges to the court's subject matter jurisdiction can take one of two forms: (1) an argument that the complaint's allegations, taken as true, do not support subject matter jurisdiction (a "facial challenge" to jurisdiction); or (2) an argument that the jurisdictional allegations in the complaint are not true ("factual challenge" to jurisdiction). *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). If the former, a plaintiff is afforded the same procedural protection he would receive under Rule 12(b)(6); in other words, the facts stated in the complaint must be taken as true, and "the motion must be denied if the complaint alleges sufficient facts to invoke

subject matter jurisdiction." *Id.* at 192. If, however, a defendant makes a factual attack, "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *United States ex rel. Vuyyuru v. Jadhav*, 555 F. 3d 337, 348-49 (4th Cir. 2009). "Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Similarly, under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). "Where a challenge to personal jurisdiction is addressed only on the basis of motion papers, supporting legal memoranda, and the relevant allegations of the complaint, 'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 676 (M.D.N.C. 2011) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In that instance, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. "[W]here the defendant provides evidence that denies the facts essential for jurisdiction, the plaintiff must present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant on which the defendant has presented evidence." *Pan-American*, 825 F. Supp. 2d at 676 (citing *Pinpoint IT Servs., L.L.C v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 716-17 (E.D. Va. 2011); *Indus. Carbon Corp. v. Equity*

*Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990)). At this stage, if the court determines that a plaintiff has established a prima facie showing of personal jurisdiction, the court "will proceed as if it has personal jurisdiction over the matter, although factual determinations to the contrary may be made at trial." *Pinpoint*, 812 F. Supp. 2d at 717 (citing 2 James W. Moore et al., *Moore's Federal Practice* ¶ 12.31 (3d ed. 2011)).

As to the Defendants' motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the standard is well-known. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). While the court accepts the factual allegations as true, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Under Rule 15(a)(2), a court may grant leave to a party to amend a pleading, and such leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). However, leave to amend is properly denied if the amendment is prejudicial to the opposing party, there is bad faith on the part of the moving party, or the amendment would be futile. *Edwards*, 178 F.3d at 242.

An amendment is considered futile if the asserted claim would not withstand a 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (4th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treas, State of Michigan, Rev. Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

## III. DISCUSSION

The parties' motions are somewhat overlapping; indeed, it is the filing of the Partial Motion to Dismiss that forms the basis of Hagans's Motion for Leave to File a Supplemental Complaint. Because the Partial Motion to Dismiss raises issues of jurisdiction, the court will consider that motion first.

### A. Partial Motion to Dismiss

Defendants move to dismiss the state-law tort claims against the City and Officer Hunt in his official capacity, arguing that those claims are barred by the doctrine of governmental immunity. Defendants also move to dismiss Hagans's claims based in negligence, arguing that Hagans has only alleged intentional acts. Finally, Defendants move to dismiss Hagans's official capacity claims, contending they are duplicative of the claims against the City.

#### 1. Governmental Immunity

In North Carolina, "[a] municipality and its agents are immune from liability for the torts of its officers and employees if the torts are committed while they are performing a governmental function." *Clayton v. Branson*, 153 N.C. App. 488, 493, 570 S.E.2d 253, 256-57 (2002) (quotation omitted); *see also Evans v. Chalmers*, 703 F.3d 636, 655 (4th Cir. 2012) ("Clearly, North Carolina municipalities enjoy governmental immunity from state common-law tort claims arising out of their performance of government, as opposed to proprietary functions."). Moreover, "the provision of police services constitutes a government function

protected by governmental immunity." *Evans*, 703 F.3d at 655.

Nevertheless, pursuant to N.C. Gen Stat. § 160A-485, such immunity may be waived "to the extent that the municipality is indemnified by an insurance contract or a local government risk pool." *Id.* at 257 (citation omitted). Such immunity is waived "only to the extent of coverage provided." *Wright v. Gaston Cnty.*, 205 N.C. App. 600, 606, 698 S.E.2d 83, 88 (2010) (quotation omitted). "A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." *Patrick v. Wake Cnty. Dep't of Human Servs.*, 188 N.C. App. 592, 596, 655 S.E.2d 920, 923 (2008). Under North Carolina law, "waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity . . . must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 299 S.E.2d 618, 627 (1983).

Here, Hagans alleges that Defendants either do not have governmental immunity, or alternatively, they have waived such immunity by purchasing liability insurance, in accordance with N.C. Gen. Stat. § 160A-485. *See* Compl. [DE-1-1] ¶¶ 21-22. Had Defendants launched just a facial attack on the subject of governmental immunity and jurisdiction, this allegation would be enough to withstand a motion to dismiss. Defendants, however, are making a factual attack on the issue of jurisdiction. To that end, Defendants have proffered the Affidavit of Theodore Voorhees [DE-11-1], the City Manager for Fayetteville, wherein Voorhees states that on January 24, 2013, the City had a Retained Limit Policy issued by Argonaut Insurance Company, and this was the sole insurance policy purchased by the City. Aff. of Voorhees [DE-11-1] ¶4.[1] Although

[1] The court reiterates that the Defendants have moved under Rule 12(b)(1) and (2), and raised a factual attack on the issue of jurisdiction. For this reason, the court may go beyond the pleadings and consider evidence. *See Jadhav*, 555 F. 3d at 348-49; *Pan-American*, 825 F. Supp. 2d at 676. Additionally, this procedural posture distinguishes this case from another case before the undersigned cited by Hagans, *Johnson v. City of Fayetteville*, 5:12-CV-456-F, where the court denied a motion for judgment on the pleadings regarding the waiver of governmental immunity. *See*

*. . . continued*

the policy does provide coverage for "law enforcement wrongful acts," it also contains a Common Policy Conditions Endorsement, which provides the following:

> 12. Sovereign Immunity and Damages Caps
>
> For any amount for which the Insured would not be liable under applicable governmental or sovereign immunity but for the existence of this Policy; the issuance of this insurance shall not be deemed a waiver of any statutory immunities by or on behalf of any insured, nor of any statutory limits on the monetary amount of liability applicable to any insured were this Policy not in effect; and as respect to any "claim," we expressly reserve any and all rights to deny liability by any reason of such immunity, and to assert the limitations as to the amount of liability as might be provided by law.

Aff. of Voorhees, Ex. A, Part 1 [DE-11-2] at 10. Defendants contend that this provision establishes that no coverage is provided for any claim for which the defense of governmental immunity is available, and therefore they cannot be deemed to have waived governmental immunity. Hagans argues, however, that the insurance policy language is ambiguous.

North Carolina courts follow "traditional rules of contract instruction when interpreting insurance policies." *Estate of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs.*, 204 N.C. App. 338, 342, 694 S.E.2d 405, 409 (2010) (quoting *Dawes v. Nash Cnty.*, 357 N.C. 442, 448, 584 S.E.2d 760, 764 (2003)). "If the language in an exclusionary clause contained in a policy is ambiguous, the clause is to be strictly construed in favor of coverage." *Id.* (quotations omitted). If, however, "the meaning of the policy is clear and only one reasonable interpretation exists, the court must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Dawes*, 357 N.C. at 449, 584 S.E.2d at 764.

---

*Johnson*, 5:12-CV-456-F, slip. op at 36 (E.D.N.C. March 28, 2013). On a motion for judgment on the pleadings, the court is not to consider evidence outside the pleadings.

Hagans argues that the "Sovereign Immunity and Damages Caps" endorsement is "ambiguous at best." Resp. to Partial Mot. to Dismiss [DE-16] at 16. He contends that in other cases where courts have found the purchase of liability insurance did *not* waive governmental immunity, the policies' endorsement/exclusionary language clearly and unequivocally "excluded" the specific claims at issue from coverage. According to Hagans, the "Sovereign Immunity and Damages Caps" does not clearly and unequivocally exclude claims that are otherwise subject to governmental immunity.

The court, however, has trouble discerning what meaning this provision can have, other than the issuance of the policy shall not be deemed to waive immunity, and the reservation of rights to deny liability by reason of such immunity. No other meaning is suggested by Hagans. Consequently, the court finds that the policy does not waive governmental immunity as to Hagan's claims, Defendants are entitled to dismissal of Plaintiff's claims for negligence, negligence per se and assault and battery (Counts I-VI) against the City and Officer Hunt in his official capacity, and the Partial Motion [DE-11] is ALLOWED as to those claims. *See Arrington v. Martinez*, 215 N.C. App. 252, 716 S.E.2d 410 (2011) (holding that governmental immunity barred suit for wrongful death and related tort claims which arose out of fatal shooting by police officer); *Schlossberg v. Goins,* 141 N.C. App. 436, 439–45, 540 S.E.2d 49, 52–55 (2000) (recognizing that assault and battery claims brought against police officers in their official capacity are barred by governmental immunity unless immunity has been waived).[2]

---

[2] The court recognizes that in addition to arguing that the policy's provisions are ambiguous, Hagans also argues that the assertion of the defense of governmental immunity violates his substantive due process and equal protection rights. The court addresses this argument more fully in connection with Hagans' Motion for Leave to File a Supplemental Complaint, but notes that even taking Hagan's assertion as true and correct, it would not preclude Defendants from asserting the defense as a matter of law. *See Jones v. City of Durham*, 183 N.C. App. 57, 65, 643

. . . *continued*

2. Negligence

Defendants also move to dismiss Counts I-II and IV-V of the Complaint, arguing that Hagans has alleged that Officer Hunt acted intentionally when shooting Nijza, and such allegations of intentional conduct cannot support claims of negligence. In so arguing, Defendants rely heavily on an unpublished opinion from the Fourth Circuit, *Smith v. Lusk*, 544 F. App'x 280 (4th Cir. 2013), where the Fourth Circuit affirmed the trial court's entry of judgment as a matter of law against an estate's claim for simple negligence arising out of a police officer's shooting of the deceased. *Lusk* is readily distinguishable from the instant action, in that the court determined that the estate failed to present sufficient evidence to support a claim for simple negligence. *Id.* at 284-85. Here, of course, Hagans has not had the opportunity—nor is he required—at this stage of the proceedings to present evidence. Additionally, the court has reviewed the Complaint, and cannot say that Hagans has solely put forth allegations of intentional conduct in support of the negligence claim. Finally, the court is cognizant that Hagans is allowed under the federal rules to state alternative or inconsistent claims. *See* Fed. R. Civ. P. 8(d). Accordingly, Defendants' Partial Motion to Dismiss [DE-11] is DENIED as to this argument.

3. Official Capacity Claims

Defendants also move to dismiss all official capacity claims against Officer Hunt and any Doe Defendants, contending they are duplicative of the claims against the City. *See* Mem. in Support of Partial Mot. to Dismiss [DE-12] at 13-14 (citing *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his

---

S.E.2d 631, 636 (2007) ("[E]ven if we **were** to hold that the City's policies governing its decisions of when to waive sovereign immunity were constitutionally infirm, defendants would nonetheless be entitled to **assert** sovereign immunity in this case.") (emphasis in original).

official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."). Despite contending that the Defendants' "partial motion to dismiss should be denied in its entirety," *see* Resp. to Partial Mot. to Dismiss [DE-16] at 1, Hagans offers no specific response to this argument. The court agrees with Defendants, and the Partial Motion to Dismiss [DE-11] is ALLOWED to the extent that it seeks the dismissal of all official capacity claims against Officer Hunt and the Doe Defendants as duplicative.

**B. Motion for Leave to Amend**

In response to the Defendants' Partial Motion to Dismiss, Hagans seeks leave to file an amended complaint asserting claims for violation of his substantive due process and equal protection rights. Because the court finds that any attempt to assert such a claim is futile, the motion [DE-21] is DENIED.

Again, Hagans asserts that by asserting governmental immunity and moving to dismiss on that basis in this case, but not doing in so in response to other similar claims and cases, the City has violated his rights to substantive due process and equal protection under the Fourteenth Amendment to the United States Constitution. He seeks to enforce this alleged deprivation of his federal constitutional rights under § 1983. Additionally, Hagans contends that the Defendants' assertion of governmental immunity in this case violates the Equal Protection clause of Article I, Section 19 of the North Carolina Constitution.

1. <u>Substantive Due Process</u>

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Depending upon whether the claimed [due process] violation is by executive act or legislative enactment, different methods of judicial analysis are appropriate. . . . because there are different 'criteria' for

determining whether executive acts and legislate acts are 'fatally arbitrary,' an essential element of any substantive due process claim." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (en banc) (citing *Lewis*, 523 U.S. at 846).

If the claimed violation arises from legislative enactment, judicial review entails a two-step process. The first step requires a determination of whether a plaintiff asserts the violation of a fundamental right or liberty interest which is "objectively, deeply rooted in this Nation's history and tradition." *Id.* at 739 (quotation omitted). This requires "a 'careful description' of the asserted liberty right or interest that avoids overgeneralization in the historical inquiry." *Id.* at 747 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 722-23 (1997). If the plaintiff does assert the violation of a fundamental right, then the court subjects the challenged legislative action to strict scrutiny review; i.e., the legislation must be narrowly tailored to serve a compelling state interest. *Id.* at 739. (citations omitted). If plaintiff does not assert the violation of a fundamental right, however, then the court reviews the legislative action under the rational basis standard. *Id.* Under that standard of review, legislative action survives review so long as it is reasonably related to a government interest. *Id.*

If the claimed violation arises from an executive act, then the issue of "fatal arbitrariness" must be addressed as a threshold question. *Id.* at 738. The court considers whether the challenged conduct "shocks the conscience;" that is, "whether the challenged conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious.'" *Id.* quoting (*Lewis*, 523 U.S. at 847 n.8). If the challenged conduct does not meet the "shock the conscience" test, a substantive due process claim fails. *Id.* If, however, the challenged conduct does "shock the conscience," the court proceeds to determine "the nature of the asserted interest to determine the appropriate level of protection." *Id.*

The court discerns that Hagans is challenging executive action. According to Hagans, "the gravamen" of his claims is that the City has a history of arbitrarily waiving the defense of governmental immunity and/or settling cases, while persisting in the assertion of the defense and not settling substantially similar claims in other cases. Whatever may be said about this allegedly "arbitrary" practice, it cannot be said to be "so egregious, so outrageous, that it may fairly said to shock the contemporary conscious." *Hawkins*, 195 F.3d at 738. A municipality's decision to persist in asserting the defense of governmental immunity in response to state-law tort claims—or to not persist in asserting such a defense—cannot be said to be "a mindless abuse of power, or a deliberate exercise of power as an instrument of oppression, or power exercised without any reasonable justification in the service a legitimate governmental objective." *Id.* at 746 (alterations and quotations omitted). Litigation strategy, including the decision to settle a claim asserted in litigation, necessarily entails a great deal of discretion that "cannot be reduced to a mathematical formula." *Jones*, 183 N.C. App. at 63, 643 S.E.2d at 635 (distinguishing the decision to settle a claim from the processes "involved in decisions about zoning, permitting, or eligibility for public services"). In other words, the discretion in legal strategy is guided by countless subjective factors, and normally not controlled by objective considerations that can be summarized in a tidy checklist. Under these circumstances, the court cannot find that a municipality's assertion of an affirmative defense it is legally entitled to raise—or may, if it so chooses, abandon—"shocks the contemporary conscience." Accordingly, Hagans's claim for violation of his substantive due process rights as secured by the Fourteenth Amendment to the United Constitution would necessarily fail, and his motion for leave to amend the complaint to assert such a claim is futile and is DENIED.[3]

---

[3] Even if the court considers Hagans to be challenging legislative action, his claim would still be futile. First, he

. . . *continued*

2. Equal Protection

Hagans also seeks to assert claims for the violation of his equal protection rights secured under both the North Carolina and federal constitutions. The North Carolina Supreme Court generally interprets the state and federal equal protection clauses consistently with each other. *See Blankenship v. Bartlett*, 363 N.C. 518, 522, 681 S.E.2d 759, 762 (2009). Under both constitutions, governments must "apply each law, within its scope, equally to persons similarly situated" and requires "that any differences of application be justified by the law's purpose." *Sylvia Dev. Corp. v. Calvert Cnty., MD*, 438 F.3d 810, 818 (4th Cir. 1995); *see also Blankenship*, 363 N.C. at 521, 681 S.E.2d at 762. This does not differing treatment is prohibited *in toto*; rather, the purpose of the equal protection clause "is to secure every person within the States' jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota Cnty*, 260 U.S. 441, 445 (1923)).

To state a colorable equal protection claim, a plaintiff must allege facts showing (1) the plaintiff is a member of a suspect or quasi-suspect class; (2) the plaintiff's fundamental rights have been burdened; or (3) he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 283 (4th Cir. 2007) ("quoting *Olech*, 528 U.S. at 564). If the

---

has not identified any right he has to pursue his assertion of state-law tort claims against a municipality that holds governmental immunity or receive a monetary settlement from a municipality. *See Clayton v. Branson*, 170 N.C. App. 438, 453-54, 613 S.E.2d 259, 270-71 (2005) (explaining that absent a waiver of governmental immunity by the purchase of liability insurance, a plaintiff is barred from asserting tort claims against a city, and therefore cannot have "a constitutionally protected" right to do so, nor does a plaintiff have a statutory right to a settlement with a city). Nor, if he had, could such a right be deemed a "fundamental right." *See Hawkins*, 195 F.3d at 748. As such, the City's decision to pursue a governmental immunity defense is subject to rational basis review. It strains all credulity to suggest that the decision to do so is not rationally related to some government interest.

government has neither employed a suspect classification nor infringed a fundamental right, then the plaintiff has the burden of pleading facts that show there was no rational relationship between the challenged action and a legitimate government interest. *Olech*, 528 U.S. at 564. Moreover, the Supreme Court has cautioned:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008) (contrasting siutations where governments consistently apply objective criteria with situations where the government exercises "discretionary authority based on subjective, individualized determinations").

Here, Hagans has not alleged that the decision to move to dismiss his state-law tort claims was based on his membership in a suspect class, nor does he suggest that the decision implicates a fundamental right. Thus, to state a plausible equal protection claim, he must allege facts showing that he was intentionally treated differently from others similarly situated and there was no rational basis for the difference in the treatment. Hagans alleges that in at least one case, the City of Fayetteville asserted the defense of governmental immunity, but did not move for dismissal or summary judgment on that basis and later settled the claim with the plaintiff. *See* Proposed Amend. Compl. [DE-21-1] ¶¶ 108-09.[4] Even if this court accepts that Hagans's

[4] Hagans alleges that in another case, *Grission v. City of Fayetteville*, No. 5:14-CV-272-BO, the City had asserted the governmental immunity defense but has not sought to avoid liability by seeking a dismissal on the grounds of governmental immunity. Proposed Amend. Compl. [DE-21-1] ¶ 114. A review of the docket in that case now shows that while at the time Hagans filed the motion for leave the City had not moved for summary judgment on the issue of governmental immunity, it has since done so. *See Grission*, No. 5:14-CV-272-BO, Mem. in Support of Mot. for Summ. J. [DE-27] at 7-12.

allegations regarding that earlier case suffice to show that he is similarly situated in all relevant respects to the earlier claimant, the court nevertheless finds that "the City's allegedly selective use of the immunity defense, without more, does not meet the requirements necessary to survive a motion to dismiss." *Frye v. Brunswick Cnty. Bd. of Educ.*, 612 F. Supp. 2d 694, 707 (E.D.N.C. 2009). As a matter of law, a municipality's discretion to assert the governmental immunity defense and/or to pay certain claims, but not others, is rationally related to a legitimate government interest. *Id.* Accordingly, Hagans's attempt to assert an equal protection claim under the North Carolina Constitution[5] and § 1983 is futile.

## IV. CONCLUSION

For the foregoing reasons, the Partial Motion to Dismiss [DE-11] is ALLOWED in part and DENIED in part, and the following claims are DISMISSED: (1) Counts I-VI to the extent Plaintiff asserts them against the City and Officer Hunt in his official capacity and (2) all other claims asserted against defendants in their official capacities. The Motion for Leave to File a Supplemental Complaint [DE-21] is DENIED.

---

[5] The court recognizes that this decision may be in some tension with the North Carolina Court of Appeals' decision in *Dombrowlska v. Wall*, 138 N.C. App. 1, 530 S.E.2d 590 (2000). In *Dombrowlska*, the North Carolina Court of Appeals reversed the trial court's grant of summary judgment to the City of Greensboro on the plaintiff's equal protection and substantive due process claims. The plaintiffs there alleged that the City of Greensboro's custom of waiving governmental immunity and paying claims for damages to tort claimants similar to plaintiffs while asserting immunity and refusing to pay plaintiffs' claims violated their due process and equal protection rights. The North Carolina Court of Appeals reasoned that the City's "custom" did not appear to apply "any uniform rule of action or regulations applicable to all tort claimants against the City" and that the plaintiffs had created a genuine issue of material fact as to whether the City had acted arbitrarily and capriciously and whether the City's behavior was reasonably related to a legitimate governmental objective. *Id.* at 18-19, 530 S.E.2d at 602. To the extent that the *Dombrowlska* court analyzed federal law, its opinion is not controlling on this court. To the extent that *Dombrowlska* court applied state law, it appears that subsequent panels of the North Carolina Court of Appeals have taken pains to distinguish *Dombrowlska* or limit its holding. *See, e.g., Clayton v. Branson*, 138 N.C. App. 448, 613 S.E.2d 259 (2005); *Jones v. City of Durham*, 183 N.C. App. 57, 643 S.E.2d 631 (2007); *Beck v. City of Durham*, 154 N.C. App. 221, 573 S.E.2d 183 (2002). Given the apparent retreat from *Dombrowlska*, this court does not find that it is a reliable indicator as to how the North Carolina Supreme Court would rule on the issue.

SO ORDERED. This the 17 day of July, 2015.

James C. Fox
Senior United States District Judge